**Albert THOMAS, Plaintiff–Appellant,**

v.

**David C. EVANS, et al., Defendants–Appellees.**

**No. 87–8534.**

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1989.

Barbara H. Robinson, Macon, Ga. (court appointed), for plaintiff-appellant.

Michael E. Hobbs, State Law Dept., Atlanta, Ga., for defendants-appellees.

Before JOHNSON and CLARK, Circuit Judges, and VINSON *, District Judge.

VINSON, District Judge:

Albert Thomas, a prisoner acting pro se, appeals the district court's order dismissing his complaint under Rule 11, Federal Rules of Civil Procedure. Because the record in this case does not support such a sanction, we reverse and remand for further proceedings consistent with this opinion.

## I. *Background*

Albert Thomas is an inmate at Georgia State Prison. Since 1983, Thomas has filed approximately ten lawsuits against prison officials. In *Thomas v. Newsome,*[1] Thomas was partially successful and the jury awarded him $50 in actual damages and $3,500 in punitive damages against two prison officials. The jury in *Newsome* found that two prison officials denied Thomas access to the law library in violation of his first amendment rights. The jury rejected Thomas' eighth amendment claim that he was assigned to the prison's auto tag plant in deliberate disregard of an existing serious pulmonary condition.

The verdict in *Newsome* was rendered on March 21, 1986. On March 26, 1986, prison officials conducted a "shakedown," or contraband search, of dormitory C–4 where Thomas' cell was located. These officials confiscated some materials, including legal documents and legal reference materials, from Thomas' cell. Thomas alleged that the officials also ransacked his cell. Thomas reported the incident to the United States District Court Judge who presided in *Newsome*. The judge ordered prison officials to return the legal materials or be subject to contempt or "an action for retaliation."[2]

---

* Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida, sitting by designation.

1. Consolidated and tried in the United States District Court for the Southern District of Georgia as number CV483–194, CV483–195; affirmed in an unpublished opinion, 828 F.2d 773 (11th Cir.1987).

2. The matter was addressed in an order denying a motion for judgment notwithstanding the verdict.

Following this incident, the *Newsome* verdict was appealed. The confiscation matter, however, had not been resolved to Thomas' satisfaction, and he continued to seek relief from the District Court Judge. The judge entered an order directing Thomas not to file additional motions because such motions could impede the orderly appeal of the *Newsome* case. While the *Newsome* case was on appeal, Thomas filed this case and it was assigned to the same judge.[3]

Thomas contends that his legal materials were confiscated in retaliation for the jury verdict of March 21, 1986, and that most of the legal materials have not been returned.[4] Thomas further contends that prison officials conspired to retaliate against him, and continued to retaliate by assigning him to work in the metal fabrications area and by filing numerous disciplinary reports against him when he was unable to work because of a pulmonary condition. Thomas claims that these acts were committed in retaliation for his exercise of free speech rights under the first amendment, and that the confiscation of his legal materials violated his first amendment right of access to the courts. In addition, Thomas alleges that his eighth amendment rights were violated when prison officials failed to provide him adequate medical care, and assigned him to the metal fabrications area despite his pulmonary condition. According to Thomas, that area is particularly hazardous to him due to the dust and fumes generated by the machinery. Thomas also claims that a disproportionate number of blacks are assigned to the metal fabrications area in violation of the equal protection clause. Lastly, Thomas claims that prison officials violated the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO) by committing various acts, including compensating inmates with coffee in lieu of money.

The defendants filed an answer and requested, *inter alia,* that the complaint be dismissed and that they be awarded costs and fees under Title 42, *United States Code,* Section 1988, and Rule 11. On February 24, 1987, Thomas filed a motion for a preliminary injunction requesting that prison officials be required to return his legal materials and cease retaliatory actions against him. The case was assigned to the Court's magistrate, who set an evidentiary hearing.[5]

At the evidentiary hearing, Thomas explained that he was unable to present his case effectively due to pending discovery disputes and the absence of his key witnesses. Thomas allegedly was having difficulty obtaining discovery and had filed a motion to compel discovery which was pending at this time. Thomas did not have witnesses present because the court had not ruled on his motion for a writ of habeas corpus ad testificandum.[6] The magistrate initially expressed some concern over Thomas' lack of witnesses, but proceeded with the hearing. The magistrate denied Thomas' motion for injunctive relief on the ground that Thomas was not likely to succeed on the merits because the doctrine of res judicata barred his complaint. The magistrate referred to the complaint and verdict from *Newsome,* but did not make these documents part of the record. Fo-

---

**3.** The plaintiff named 11 state officials as defendants, including David Evans, Commissioner of the Georgia Department of Corrections, Walter Zant, Deputy Commissioner of the Georgia Department of Corrections, and nine prison officials. Thomas later sought to amend the complaint and add other defendants including the members of the Georgia Board of Corrections and various medical personnel from the prison. The motion to amend the complaint was not addressed on the merits.

**4.** Thomas also alleges that the confiscation occurred pursuant to an established state procedure. These allegations may suffice to state a claim for deprivation of property without due process. *See Neary v. Dugger,* 766 F.2d 456, 457 (11th Cir.1985).

**5.** The record is unclear, but the apparent purpose of the hearing was to consider the motion for a preliminary injunction.

**6.** The record indicates that the hearing was scheduled by order dated March 9, 1987. Thomas filed the motion for a writ immediately after being released from the hospital on March 13, 1987. The motion, however, was not referred to the judge until after the hearing was held on March 16, 1987. The record does not indicate the cause of Thomas' hospitalization.

cusing on Thomas' medical condition, the magistrate found that the jury in *Newsome* decided that Thomas was physically able to work in the industrial area of the prison. To support this finding, the magistrate allowed the defendants to introduce evidence of Thomas' medical condition.

Dr. Henry Robinson, medical director at Georgia State Prison, testified that Thomas had been examined on several occasions and did not have any permanent disability disqualify him from working in the industrial area. Due to a pulmonary condition, however, Thomas was not permitted to work around toxic chemicals. Dr. Robinson also testified that he had visited the metal fabrications area and found that the amount of dust and fumes would not aggravate Thomas' pulmonary condition. Virgil Duckworth, Thomas' counselor at the prison, testified that Thomas' medical needs were considered before he was assigned to the metal fabrications area.

Thomas disputed the testimony regarding the amount of dust and fumes present in the metal fabrications area, and informed the magistrate that other prisoners could support his claim if allowed to testify. The magistrate responded that the court would give no weight to the testimony of prisoners on that topic. Thomas also attempted to raise arguments relating to his other claims. He pointed out that his legal materials were confiscated after the jury verdict was rendered in *Newsome* and that the judge had not resolved the matter. The magistrate rejected these arguments and stated at the hearing that he was inclined to dismiss the complaint. The magistrate further stated that the defendants would probably prevail on both a motion for summary judgment and a motion for sanctions under Rule 11.

Although the defendants did not file a separate motion to dismiss, a motion for summary judgment, or a motion for sanctions under Rule 11, the magistrate entered a report on April 21, 1987, recommending

to the court that Thomas' complaint should be dismissed as a sanction for violation of Rule 11. Thomas filed a timely objection to the magistrate's report and recommendation, raising several of the arguments he had made at the evidentary hearing. On May 26, 1987, the court adopted the report and recommendation without revision. Thomas appeals the district court's sanction under Rule 11.

## II. *Discussion*

An attorney or a party may be sanctioned under Rule 11 for filing a pleading that: (1) has no reasonable legal basis; (2) has no reasonable factual basis; or, (3) is filed for an improper purpose. *See United States v. Milam*, 855 F.2d 739, 742 (11th Cir.1988). The purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Rule 11, Fed.R.Civ.P., advisory committee note. Regarding the scope of appellate review of a Rule 11 sanction, factual determinations and the decision to impose sanctions are within the discretion of the district court and are subject to review only for abuse of that discretion. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987). Determining whether a pleading or motion is legally sufficient, on the other hand, involves a question of law subject to de novo review. *Id.*

The district court held that sanctions under Rule 11 were warranted primarily based on its application of the doctrine of res judicata.[7] The court reasoned that the complaint was filed with no reasonable legal basis because it raised claims that were "an extension" of the *Newsome* case. The court also found that Thomas' first amendment and eighth amendment claims were filed with no reasonable basis in fact because Thomas did not suffer from any permanent disability disqualifying him from working in the metal fabrications area. Lastly, the court found that Thomas had filed the complaint, a motion for a physical

---

7. The court used the phrase "collateral estoppel," but held that the plaintiff's *claims* were precluded. Although some courts use different terminology, generally, "res judicata" refers to

claim preclusion and "collateral estoppel" refers to issue preclusion. *See Hart v. Yamaha–Parts*, 787 F.2d 1468, 1470 & 1473 (11th Cir.1986).

examination, and a motion for injunctive relief, in order to harass prison officials.

### A. *Reasonable Legal Basis*

 The primary rationale of the district court was that Rule 11 sanctions were warranted because the claims brought in this case are barred by the doctrine of res judicata. A plaintiff may be sanctioned under Rule 11 for filing claims barred by res judicata. *See Patterson v. Aiken*, 841 F.2d 386 (11th Cir.1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986). Rule 11 sanctions are appropriate if the filing was unreasonable under the circumstances existing at the time of filing. *See Donaldson v. Clark, supra,* 819 F.2d at 1556. Rule 11 sanctions are not appropriate, however, merely because the pleader's view of the law is incorrect. Rule 11 contemplates "some prefiling inquiry into both the facts and law," but "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Rule 11, Fed.R.Civ.P., advisory committee note. *See also Zaldivar v. City of Los Angeles, supra,* 780 F.2d at 830 (granting summary judgment against the pleader is not dispositive of the issue of sanctions because the pleader is not required to be correct in his view of the law).

 Rule 11 applies to pro se plaintiffs, but the court must take into account the plaintiff's pro se status when determining whether the filing was reasonable. *See Patterson v. Aiken, supra,* 841 F.2d at 387. *See also Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971) (pleadings filed by pro se litigants should be reviewed under a "less strict" standard); *Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986); *Pace v. Evans*, 709 F.2d 1428 (11th Cir.1983). Of course, before considering sanctions based on the application of res judicata, the court must determine that the elements of res judicata are present.

 Res judicata refers to "the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." *Migra v. Warren City School District Bd. of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). The federal common law of res judicata determines the preclusive effect of a federal court judgment in a subsequent federal court case. *See, e.g., Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986). The doctrine of res judicata bars a subsequent suit if four elements are present: (1) a final judgment on the merits rendered in the previous suit; (2) the judgment was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both cases; and (4) the same cause of action is involved in both cases. *Id.* at 1470. Whether the same cause of action exists is determined by reference to the "operative nucleus of fact." *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir.1984).

 In this case, the magistrate's report and recommendation did not include an examination of the factual bases of most of the claims raised in the complaint. In fact, it did not include any reference to several of the claims, such as the equal protection claim and the RICO claim. The magistrate also did not discuss the elements of res judicata or apply those elements to the facts of this case. An order imposing Rule 11 sanctions should state the *specific* basis of the sanction to allow for meaningful appellate review. *See* American Bar Association, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure*, 121 F.R.D. 101, 128–29 (1988); *see also* American Judicature Society, *Rule 11 in Transition, The Report of the Third Circuit Task Force on Federal Rules of Civil Procedure 11*, p. 97 (Studies of the Judicial System 1989) ("A decision imposing Rule 11 sanctions should contain reasoned findings and conclusions sufficient ... to serve as a basis of informed appellate review.").

In addition, the record does not include evidence of the *Newsome* case. At the evidentiary hearing, the magistrate referred to the complaint and verdict, but did not describe their contents with any precision. The absence of this information in the record makes it very difficult for this court to review the district court's finding

of res judicata. In *Concordia v. Bendekovic*, 693 F.2d 1073, 1076 (11th Cir.1982), we stated that:

> Additional evidence, preferably a copy of the ... trial court's records, is required in order to apply the doctrine of res judicata in the context of either a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. "As a general rule, a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence".

(Citations omitted).

This problem would be less significant if the parties agreed on the claims that were litigated in *Newsome*, but that is not the case. For example, it appears that the eighth amendment claim in *Newsome* was based on Thomas' assignment to the auto tag plant. The *Newsome* jury rejected this claim, which in this case the magistrate interpreted to mean that Thomas was able to work in the "industrial area" of the prison. Thomas, on the other hand, contends that the eighth amendment claim in *Newsome* involved evidence regarding conditions at the tag plant, but did not involve evidence regarding conditions at the metal fabrications area. Thomas alleges that the metal fabrications area is more hazardous than the tag plant due to the amount of dust and fumes. Without the *Newsome* record, we cannot determine the scope of the eighth amendment claim litigated in that case. We also note that Thomas alleges that his medical condition has worsened since the *Newsome* verdict, and that prison officials deliberately disregarded his medical needs. These allegations indicate that the eighth amendment claim in this case may involve an operative nucleus of fact different from the facts in *Newsome*.

The record also indicates that res judicata may not bar the first amendment claim. Thomas' first amendment claim is based, in part, on the confiscation of his legal materials. The confiscation occurred after the verdict was rendered in *Newsome*. Furthermore, the District Court Judge instructed Thomas not to pursue the confiscation matter in that case. We must infer from that some basis for a separate claim. Thus, Thomas' first amendment claim may involve an operative nucleus of fact different from the facts of *Newsome*. Under these circumstances, and recognizing that Thomas is acting pro se, we cannot affirm the district court's finding that sanctions are warranted based on the doctrine of res judicata.

### B. *Reasonable Factual Basis*

The district court also held that Rule 11 sanctions were appropriate in this case because the court found no reasonable basis in fact for Thomas' first amendment and eighth amendment claims. As an initial matter, the record in this case indicates that the district court's knowledge of the claims brought in *Newsome* played a significant part in the court's determination that the first amendment claim and the eighth amendment claim brought in this case were filed with no reasonable basis in fact. Unfortunately, as previously noted, we do not have the benefit of the trial record from *Newsome*.

In evaluating the first amendment claim in this case, the district court focused exclusively on Thomas' medical condition and did not consider the factual sufficiency of Thomas' allegations that his legal materials were confiscated in retaliation for his use of the courts. The magistrate reasoned that, because Thomas had no permanent disability disqualifying him from working in the industrial area, assigning him to work there could not be retaliatory. Therefore, the magistrate concluded that Thomas' retaliation claim was filed with no reasonable basis in fact. However, the magistrate did not consider that Thomas' first amendment claim is based, in part, on the confiscation of his legal materials.

The first amendment prohibits state officials from retaliating against prisoners for exercising the right of free speech. *See, e.g., Wright v. Newsome, supra*, 795 F.2d at 968. The first amendment also prohibits state officials from denying a prisoner's legal right of access to the courts. *Johnson v. Avery*, 393 U.S. 483, 89

S.Ct. 747, 21 L.Ed.2d 718 (1969); *Hall v. Sutton,* 755 F.2d 786 (11th Cir.1985).

To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. By way of analogy, in *Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985), we held that a prisoner stated a claim of retaliation based on the prisoner being transferred to another facility even though prisoners do not have a liberty interest in remaining at a particular facility. The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech. The penalty need not rise to the level of a separate constitutional violation. *See, e.g., Wright v. Newsome, supra,* 795 F.2d 964 (prisoner stated a retaliation claim and a claim of denial of access to the courts based on the confiscation of legal materials); *Hall v. Sutton, supra,* 755 F.2d at 787 (prisoner stated a retaliation claim based on confiscation of various personal possessions).

The record in this case indicates that Thomas' legal materials were confiscated only a few days after the verdict in *Newsome* was rendered. The prison officials had been directed by the judge to return the confiscated legal materials. Whether those materials were ever returned is not clear.[8] Regardless of whether Thomas' work assignment was retaliatory, the court should have addressed the confiscation matter. Rule 11 does not apply when one prong of, or argument supporting, a claim is deficient, but other prongs or arguments support the pleading or motion. *See, e.g., Golden Eagle Distributors Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986). The district court's failure to address the confiscation matter is particularly troublesome because the confiscation of legal materials may deny a prisoner access to the courts. Because the district court did not address the factual sufficiency of the confiscation allegations, the court abused its discretion by finding that Thomas' retaliation claim was filed with no reasonable basis in fact.

The eighth amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). Thomas alleged that prison officials violated his eighth amendment rights in two distinct ways—by failing to provide adequate medical care, and by assigning him to work in an area where dust and fumes would aggravate his condition. In this case, the testimony of Dr. Robinson and Mr. Duckworth supports the court's conclusion that prison officials did not deliberately disregard Thomas' medical condition. The posture of this case, however, requires us to reverse the court's findings on the eighth amendment claim. At the time of the evidentiary hearing (and even up to the time that the magistrate entered the report and recommendation), Thomas had received very little discovery. In fact, a motion to compel discovery was pending, but was not addressed on the merits. This court has repeatedly recognized that the reasonable inquiry standard of Rule 11 should not preclude plaintiffs from establishing their claims through discovery. *See e.g., Donaldson v. Clark, supra,* 819 F.2d at 1561. *See also Phillips v. Mashburn,* 746 F.2d 782 (11th Cir.1984) (in determining the sufficiency of a pro se complaint filed in forma pauperis under Title 28, *United States Code,* Section 1915, trial court must develop the facts before dismissing the complaint). *Cf. Collins v. Walden,* 834 F.2d 961, 965 (11th Cir.1987) ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest").

In addition to the discovery problems pending in this case, Thomas could not produce witnesses at the evidentiary hearing because the court was unable to rule on Thomas' motion for a writ of habeas corpus ad testificandum.[9] Thomas claimed that

---

8. The appellees admit that this issue was not addressed at all by the magistrate.

9. Thomas' inability to introduce additional evidence is also implicated in the court's examination of the factual basis of the first amendment claim.

the testimony of a physician who had recently examined him would support his assertions regarding both his medical condition and his medical treatment at the prison. The record indicates that several doctors examined Thomas during this time frame and arrived at different conclusions regarding his pulmonary condition. Thomas had also been hospitalized several times since the jury verdict was rendered in *Newsome*. Thomas' medical profile had changed. Under the circumstances, Thomas was entitled to present some evidence regarding his medical condition and treatment.

Thomas also claimed that several prisoners could testify regarding the amount of dust and fumes in the metal fabrications area. The magistrate commented that such testimony would be inherently untrustworthy. A witness' status as a convicted felon may be relevant to that witness' credibility;[10] however, it should go without saying that the factual testimony of other prisoners cannot be disallowed solely on the basis that they are convicted felons and prisoners. Nor should their testimony be excluded because it is expected to be favorable to the prisoner litigant. Thomas should have been given an opportunity to dispute Dr. Robinson's opinion regarding the level of dust and fumes in the metal fabrications area.

We recognize that Thomas was given 15 days to object to the magistrate's report and recommendation. *See* 28 U.S.C. § 636(b)(1). He did timely file objections, and with the judge's permission, he perhaps could have filed witness affidavits or other evidence during the 15-day period. *Id.* Thomas is a prisoner acting pro se, however, and without benefit of prior discovery, it is doubtful that the time would have been sufficient to locate, prepare, or execute these materials. At the evidentiary hearing, the record reflects that Thomas was not aware that a Rule 11 sanction of dismissal was imminent. Therefore, on the record before us, it does not appear that Thomas actually had an opportunity to present evidence or actively oppose the sanction. We have held that procedural due process is implicated in Rule 11 sanction proceedings. *Donaldson v. Clark, supra,* 819 F.2d at 1558; *see infra,* note 13. The district court abused its discretion by determining at this stage of the proceedings that Thomas filed the first amendment claim and the eighth amendment claim with no reasonable basis in fact.[11]

### C. *Improper Purpose*

In this case, the district court found that Thomas filed the complaint, a motion for a physical examination, and a motion for injunctive relief, "in bad faith for the purposes of harassing and vexing correctional officials." An attorney or party may be sanctioned under Rule 11 for filing a pleading for an improper purpose, such as to harass the opposing party. *See United States v. Milam, supra,* 855 F.2d at 742. In some cases, sanctions will be appropriate to curb the abusive practice of re-filing the same claims. *See, e.g., Procup v. Strickland,* 792 F.2d 1069 (11th Cir.1986) (discussing the court's inherent power to sanction a litigant who had filed over 175 lawsuits). The excessive filing of pleadings may be evidence that pleadings have been filed for an improper purpose. *See, e.g., Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir.1987).

The record establishes that Thomas is a litigious prisoner. His claims may have been exaggerated and a nuisance to the defendants and the court. However,

---

10. *See* Rule 609, Federal Rules of Evidence.

11. We are not, in any way, suggesting that all discovery matters must be resolved before the imposition of sanctions under Rule 11. In this case, however, we have determined that sanctions were premature. The defendants had not filed a motion to dismiss or a motion for summary judgment. As a result, the record in this case does not contain any clear exposition of the plaintiff's claims, or a discussion of the factual bases of these claims. *See Donaldson v. Clark, supra,* 819 F.2d at 1555 (Rule 11 sanctions based on the factual adequacy of a complaint are best considered at the end of litigation, after the parties have moved for summary judgment and have been given notice and an opportunity to identify any genuine issues of material fact).

the court based its finding of harassment largely, if not entirely, on its evaluation of the legal and factual sufficiency of Thomas' first amendment and eighth amendment claims. Since we have reversed the district court on those findings, we must also reverse the district court's finding of harassment.[12]

### III. Conclusion

As we have frequently stated, we recognize that the flood of pro se prisoner cases presents a significant problem for the district courts. We are aware of the need to deal with these cases efficiently. On the other hand, prisoner petitions must be given an adequate initial examination and must not be dismissed unless the record supports such a sanction. *Covington v. Cole*, 528 F.2d 1365 (5th Cir.1976), *reh'g denied*, 533 F.2d 1135. Hasty dismissal of prisoner cases only adds to the burden on the courts by increasing the amount of judicial resources spent at both the appellate and the trial level. In this case, it may well be that some or all of Thomas' claims are barred by res judicata, were filed with no reasonable basis in fact, or were filed for an improper purpose. The record, however, is presently insufficient to support those conclusions. Accordingly, we REVERSE AND REMAND this case for further proceedings consistent with this opinion.[13]

---

12. We need not address the question of whether a pleading can be filed for an improper purpose when that pleading is reasonably grounded in fact and law because we cannot determine whether the claims in this case are so grounded. The sanction has been reversed because of the incomplete record and the restrictions on the plaintiff's ability to produce additional evidence at such an early stage of the proceedings. We note, however, that the Ninth Circuit has addressed this issue and held that generally a pleading well grounded in fact and law cannot be filed for an improper purpose. *See Zaldivar v. City of Los Angeles, supra,* 780 F.2d at 832 (leaving open the question of whether the excessive filing of motions may indicate an improper purpose); *see also* Schwartzer, *Sanctions under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 196 (1985) ("If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate."). *But see Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir.1987); *Brown v.*

*Federation of State Medical Boards of the United States,* 830 F.2d 1429 (7th Cir.1987).

13. Because we have held that Rule 11 sanctions are not warranted on this record, we need not reach the issues of whether dismissal was an appropriate sanction in this case, and whether the plaintiff was given adequate notice and an opportunity to be heard before the sanction was imposed. We note, however, that under circumstances such as exist in this case, a court must be particularly diligent in affording procedural due process that adequately allows a prisoner a meaningful opportunity to oppose a Rule 11 sanction. *See Donaldson v. Clark, supra,* 819 F.2d at 1557–61 (additional safeguards are warranted when the court is considering imposing a severe sanction, such as dismissal). See also American Bar Association, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure,* 121 F.R.D. 101, 127–28 (listing the factors considered by the courts when determining due process requirements).