**In re Michael Anthony McCOY and Carrie Ophelia McCoy, Debtors.**

**Bankruptcy No. 92–3428–BKC–3P3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 3, 1994.

Lance Cohen, Jacksonville, FL, for debtors.

Earl Barker, Jacksonville, FL, for claimant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon Debtors' objection to claim 7 filed by Farm Credit of North Florida, ACA. The Court held a hearing on August 26, 1993, and upon the evidence presented, enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

On August 5, 1985, debtors gave claimant a promissory note in the amount of $75,500.00. (Loan 1) The note was secured by a preferred ship mortgage on debtors fishing boat "Jackie Sue." In addition to the ship mortgage, claimants took a second mortgage on debtors' homestead and debtors purchased $4,355.00 worth of Class B stock which is

held by claimant as additional security for the loan.

On October 22, 1985, debtors gave The Federal Land Bank of Columbia a note and mortgage in the amount of $42,500.00 secured by debtors' homestead. (Loan 2) This mortgage was assigned to claimant on March 19, 1992. This note is also secured by Class B stock in the amount of $1,320.00.

On May 5, 1989, debtors executed a note for $5,000.00 in favor of South Atlantic Production Farm Credit Association which was payable to The Federal Land Bank of Columbia. Also on May 5, 1989, debtors executed a mortgage on the real estate which is the subject of the October 22, 1985, mortgage in favor of South Atlantic Production Farm Credit Association to secure loans up to $50,000.00.

On July 23, 1990, debtors executed a note for $10,000.00 in favor of claimant and on the same day executed a mortgage on their homestead to secure indebtedness up to $100,000.00. The notes for $5,000.00 and for $10,000.00 are considered in the aggregate. (Loan 3) Debtors purchased $1,320.00 worth of stock as additional collateral for the $10,000.00 and the $5,000.00 loan.

On March 9, 1992, claimant filed suit in the United States District Court, sitting in admiralty, to foreclose its preferred ship mortgage on the "Jackie Sue." Claimant filed a Motion for Default and Summary Final Judgment of Foreclosure on May 1, 1992.

Debtors filed their petition for relief under chapter 13 of Title 11 on June 12, 1992. On June 15, 1992, debtors filed a suggestion of bankruptcy in the foreclosure proceeding. On October 15, 1992, the district court stayed the foreclosure proceeding and administratively closed the case in response to debtors bankruptcy filing.

Claimant was granted relief from the automatic stay imposed by 11 U.S.C. § 362 on February 19, 1993. The Court's Order allowed claimant to complete its foreclosure action against the "Jackie Sue." However the Order states in paragraph 2, as follows: "This Order is entered for the sole purpose of allowing Movant to obtain an in rem judgment against the property and Movant shall not seek an in personam judgment against the Debtor."

The district court granted claimant's motion to reopen the foreclosure proceeding on June 7, 1993. The district court gave debtors ten days to respond to claimants motion for default and summary final judgment. Debtors responded on June 16, 1993. In their response, debtors state that the bankruptcy court, by its February 19, 1993, order only divested itself of jurisdiction as to in rem remedies in the collateral. Debtors further state that only the bankruptcy court may determine the amount of any debt owed to claimant and that any deficiency personal judgment must be entered by this Court.

By Order dated June 24, 1993, the district court granted claimant's motion for default and summary final judgment of foreclosure but granted judgment in rem only stating that any in personam action between the parties is being litigated in the bankruptcy court. The district court found, for the purposes of foreclosure, that the outstanding principal on loan 1 is $25,690.16 with interest of $1,172.54 through April 30, 1992. The per diem rate thereafter is $5.97, amounting to $2,505.84 through June 24, 1993, and that attorney fees through April 30, 1992, were $4,284.00 with an additional $1,500.00 reasonably expected for a total of $5,784.00. In addition, the court assessed taxable costs and expenses through April 30, 1992, of $4,621.91. The court granted the motion to allow claimant to sell the vessel and to credit a maximum of $39,774.35 towards the debt if claimant was the successful bidder at the sale.

Claimant bid through the marshal at the sale conducted on July 9, 1993, and credited $39,774.35 against the loan 1 debt. The sale was confirmed by the Clerk of the District Court on July 15, 1993.

Claimant filed claim 7 on January 25, 1993, in the amount of $100,620.08 "plus interest, costs, and attorney fees—as of 12/10/92." Claimant attached an itemized statement to its proof of claim which lists the following amounts as owed by debtors:

Loan 1:

| | Prepetition | 12/10/92 Post-petition | Totals |
|---|---|---|---|
| Principal | $25,690.06 | | $25,690.06 |
| Interest | 1,440.68 | 1,016.37 | 2,457.05 |
| Legal Fees | 4,764.42 | 5,342.12 | 10,106.54 |
| Substitute Custodian Fees | 2,000.00 | 3,000.00 | 5,000.00 |
| Court Costs | 2,620.00 | | 2,620.00 |
| Boat Insurance | 787.50 | 2,362.50 | 3,150.00 |
| Credit Life Insurance | 109.52 | 56.24 | 165.76 |
| **TOTALS** | $37,412.18 | $11,777.23 | $49,189.41 |

| Loan 2: | Prepetition | 12/10/92 Post-petition | 12/10/92 Totals |
|---|---|---|---|
| Principal | $38,008.78 | | $38,008.78 |
| Interest | 2,015.92 | $ 1,445.93 | 3,461.85 |
| Late Charges | 50.00 | 60.00 | 110.00 |
| Insurance | 841.50 | | 841.50 |
| **TOTALS** | $40,916.20 | $ 1,505.93 | $42,422.13 |

| Loan 3: | Prepetition | 12/10/92 Post-petition | 12/10/92 Totals |
|---|---|---|---|
| Principal | $ 8,093.74 | | $ 8,093.74 |
| Interest | 454.58 | 320.22 | 774.80 |
| Late Charges | 80.00 | 60.00 | 140.00 |
| **TOTALS** | $ 8,628.32 | $ 380.22 | $ 9,008.54 |

Debtors object to claim 7 because the amount claimed includes unliquidated pre and post-petition attorney fees, post-petition late charges, post-petition credit life insurance charges, fails to set off the Class B stock to reduce the amount debtors owe claimant and fails to account for the liquidation and satisfaction of loan 1 through the district court judgment and sale. Claimant announced at the August 26, 1993, hearing that it was withdrawing its claim to post-petition late charges and insurance on loans 2 and 3.

### Conclusions of Law

■ Claims are prima facie valid as to the claim and the amount. *In re St. Augustine Gun Works,* 75 B.R. 495 (Bankr.M.D.Fla. 1987); Federal Rule of Bankruptcy Procedure 3007. Debtor must present affirmative proof to support an objection and overcome the prima facie validity of the claim. If debtor overcomes this hurdle, then the ultimate burden for proving the amount of the claim is upon claimant. *Id.* Debtor filed a written objection to claim 7. Pursuant to 11 U.S.C. § 502(a), the Court must determine the amount of claim 7. Section 502(a) states:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim....

The Court will now determine the allowable amount of the claim.

### LOAN 1

#### Res Judicata

Debtors argue that the foreclosure action has the effect of barring litigation of the

amount of claim 7 because the foreclosure proceeding is res judicata as to this contested matter. The Court does not agree.

A federal court applying the doctrine of res judicata to a prior federal judgment must apply the federal common law of res judicata. *Thomas v. Evans,* 880 F.2d 1235 (11th Cir.1989), *appeal after remand,* 993 F.2d 1554 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 641, 126 L.Ed.2d 599 (1993). There are four requirements for a prior judgment to bar a subsequent action: (1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) a final judgment on the merits must have been rendered; (3) the parties, or those in privity with them must be identical in both actions; and (4) the same cause of action must be involved in both actions. *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 821 (11th Cir.1982), *reh'g denied,* 683 F.2d 1375, *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

In this case the first three requirements for res judicata are present. A final judgment on the merits against the defendant ship and in favor of claimant was entered by a court of competent jurisdiction. However, the Court finds that the fourth requirement, that the cause of action be the same as in the prior suit, is not present in this case. In *Ray,* the Eleventh Circuit held that "the test to determine whether the suits are the same is whether the primary right and duty or wrong are the same in each case" and that in making this determination, "the substance of the actions, not the form, controls." *Id.* at 821.

The foreclosure action was an in rem action, that is, claimant proceeded against the collateral only and did not have the ability or opportunity to proceed against debtors to receive an in personam judgment. Because claimant could not prove the entire amount of the debt and receive a personal judgment against debtors for any deficiency, if any exists after the sale of the boat, the foreclosure action is not res judicata as to this matter. In this contested matter, this Court is making a determination of the full amount of the debt including any deficiency remaining after the sale of the collateral.

Consequently, this Court is making a determination as to a different right than did the district court, and the Court does not agree with debtors that the prior action is res judicata as to this action.

In addition, even if the Court were to find that the prior proceeding constituted a bar to this Court's determination of the amount of the claim, the Court agrees with claimant's contention that debtors are judicially estopped from asserting res judicata in this matter. In their response to claimant's motion for default and final summary judgment, debtors argued that the district court could award only in rem remedies against the vessel because this Court retained jurisdiction to adjudicate the full amount of the debt and any in personam judgment. Because debtors asserted one legal position in the prior proceeding, they are estopped from asserting a contrary position in this matter; claimants cannot receive the benefit of arguing that this Court retained jurisdiction while in the district court and then argue that this Court does not have jurisdiction when the matter is before this Court. *See, In re Gaye–Joy Corp.,* 84 B.R. 235 (Bankr. M.D.Fla.1988).

*Allowable Amount of Loan 1*

Having determined that the foreclosure action does not constitute a bar to this action, the Court must determine the allowable amount of the loan 1 portion of claim 7. According to claimants proof of claim, on the petition date, debtors owed claimant $37,412.18. Debtors object to this amount because it includes unliquidated prepetition attorney fees.

Section § 101(5) of the code defines "claim" as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated ..." 11 U.S.C. § 101(5). Thus, whether a claim is liquidated or not does not affect the validity of the claim. Debtors also object to the amount included in claim 7 for prepetition attorney fees on loan 1. The ship mortgage and the real estate mortgage specifically allow for payment of attorney fees in the event claimant is required to take legal action. Debtors have

failed to show that this portion of claim 7 should not be allowed and the prepetition portion of loan 1 is allowed in the amount of $37,412.18.

Debtor argues that the sale of the vessel "Jackie Sue" in satisfaction of the foreclosure judgment fully satisfies the loan 1 debt.

Claimants credited the $39,774.35 in rem judgment against the amount due on loan 1 when the "Jackie Sue" was sold, but claimant asserts entitlement to a deficiency claim in the amount of $11,540.59 on loan 1. Claimant argues that the deficiency from the sale of the boat should be added to the amount due under debtors' homestead mortgage and paid pursuant to debtors' chapter 13 plan. At the August 26, 1993, hearing, F.R. Bridges, vice-president of special assets management for claimant, testified that the amount owed on loan 1 on the date of sale was $51,314.94. Claimant did not present any evidence as to what this amount represents because claimant included post-petition amounts in its original claim. The Court assumes that claimant arrived at the $51,-314.94 figure by including post-petition interest, fees and costs in its claim.

██ Pursuant to § 502, the Court must determine the allowable amount of a claim as of the petition date and can allow post-petition interest, fees, and costs only if claimant is an *over* secured creditor. 11 U.S.C. § 506(b). Section 506(b) states in pertinent part:

(b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Section 506(a) defines secured and unsecured claims as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent

that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of such proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

In accordance with these sections, the Court must first determine the extent to which claimant is secured to ascertain whether claimant is entitled to receive the post-petition amounts it seeks. As the code indicates, to the extent claimant has an interest in collateral that is worth less than the amount of its lien, then claimant has a secured claim equal to the value of the collateral and is not entitled to receive interest or costs on the remaining unsecured claim.

The first requirement pursuant to § 506(b) is that a separate contractual right to fees and costs be created by the loan documents. In this case, in the preferred ship mortgage, section II paragraph 4, provides that the proceeds of any sale shall first pay attorney fees, court costs, and other expenses in protecting its rights with interest payable on all amounts caused by the default. Similarly, the mortgage contracts on debtors' homestead provide, in paragraph 11(a) and 11(b), that claimant shall be reimbursed for fees and costs for foreclosure and any other necessary legal action.

Second, for claimant to be entitled to receive post-petition interest, fees and costs, the value of the collateral securing the loan must be greater than the amount owed. In addition to the preferred ship mortgage, claimant holds a second mortgage on debtors' homestead and $4,355.00 of Class B stock as security for loan 1. The amount due claimant for loan 1 on the petition date was $37,-412.18. To the extent the value of "Jackie Sue," the stock, and the homestead, after deducting the first mortgage, exceeds the amount due on loan 1 claimant is entitled to include that amount of post-petition interest and fees in its allowed claim.

██ Claimant bears the burden of showing the Court that it is over secured and

is entitled to receive post-petition interest and costs because of the value of its security. *In re Outdoor Sports Headquarters, Inc.,* 161 B.R. 414 (Bankr.S.D.Ohio 1993). Claimant holds $4,355.00 worth of Class B stock as security on loan 1. In addition, claimant presented testimony that the "Jackie Sue" was worth $25,000.00 on the sale date. Debtors testified that the value of the vessel was from $55,000.00 to $65,000.00. The Court finds the value of "Jackie Sue" to be $39,-774.35 which is the amount received for the vessel at the marshal's sale.

Neither debtors nor claimant presented any evidence of the value of debtors' homestead nor has either party filed a motion for valuation during this case. Consequently, the Court cannot determine the extent to which claimant is secured in relation to its mortgage on debtors' homestead and claimant has abandoned its right to receive post-petition interest, fees and costs based on the value of the real estate securing loan 1.

The vessel "Jackie Sue" is valued at $2,362.17 more than the debt on the petition date, and claimant holds $4,355.00 worth of stock as security. Accordingly, the allowed amount of its secured claim on loan 1 is $6,717.17.

### LOAN 2 and LOAN 3

Debtors object to the loan 2 and loan 3 portion of claim 7 because claimant seeks post-petition interest. As was true in regard to Loan 1, for claimant to be entitled to receive post petition interest, the value of the collateral securing the lien must be greater than the debt it secures.

Claimant asserts that debtors owe $40,-916.20 as prepetition debt on loan 2 and $1,445.93 in post-petition interest. Loan 2 is secured by a first mortgage on debtors' homestead and by $1,320.00 worth of Class B stock.

Claimant asserts that debtors owe $8,628.32 on loan 3. This amount consists of principal, interest and late charges. Claimant also asserts that it is entitled to receive $320.22 in post-petition interest. Loan 3 is also secured by $1,320.00 worth of Class B stock.

For the reasons previously stated, the Court is unable to ascertain whether claimant is over secured as to the mortgage on debtors' homestead and can only determine that claimant is secured to the extent of the value of the Class B stock. The value of the stock is insufficient to allow claimant to receive the post-petition amounts claimed. Debtors did not object to the prepetition amounts in claim 7 for loan 2 and 3. Accordingly, the prepetition amounts sought by claimant and are allowed.

### CLASS B STOCK

■ Debtors objected to claim 7 because claimant had not setoff against the Class B stock and given debtors a corresponding credit for loans 1, 2 and 3. Claimant objects to debtors' assertion that it is required to setoff against the stock. Debtors apparently abandon this aspect of their objection. In the proposed memorandum opinion submitted to the Court, debtors argue in footnote 4: "In its determination, the Court has not set off or given debtors credit for the Class B stock. The issue of determination of secured status was not before this Court nor an adversary proceeding for turnover. Nothing in this opinion should be construed as a finding in either parties (sic) favor with respect to the ownership and right to the Class B stock." The Court interprets this to mean that debtors are not pursuing their objection to claimant's failure to setoff against the stock to decrease the amount of the debt claimant asserts is owed by debtor. Accordingly, the Court expresses no opinion whether claimant may be required to setoff an amount that corresponds with the amount of stock issued to debtors as security for debtors' loans.

### CONCLUSION

The foreclosure action in the district court was not res judicata to claimant's right to prove in this Court the amount debtors owe on loan 1 which was secured by the boat mortgage, the second mortgage on the homestead, and the Class B stock. Claimant failed to introduce any evidence of value as to the homestead property, and the Court is unable to determine the value of that collat-

eral. Consequently, claimant has abandoned its right to receive post-petition interest, fees and costs based upon the value of the homestead collateral on loans 1, 2 or 3. Claim 7 is allowed in the amount of $6,717.17 for loan 1, $40,916.20 for loan 2, and $8,628.32 for loan 3. A separate order consistent with these findings of fact and conclusions of law will be entered.