[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11222
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-25073-KMW

WILLIE LEE HARPER,

Plaintiff-Appellant,

versus

ADMINISTRATIVE LIEUTENANT,
Nakenya Weatherspoon,
ASSISTANT WARDEN (PROGRAMS),
Joyce T. Burke,
SERGEANT LYTONIA MERRITT,
Florida Department of Corrections,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 24, 2021)

Before MARTIN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Willie Lee Harper, a state prisoner proceeding *pro se*, appeals the *sua sponte* dismissal of his prisoner civil rights complaint for failure to state a claim upon which relief may be granted. Harper claims that he was terminated from his law library job after he filed a grievance against two prison guards involving an unrelated disciplinary hearing. Because Harper plausibly alleged a factual basis for his First Amendment retaliation claim and a separate conspiracy to retaliate claim, we vacate the district court's order as to those two claims and remand for further proceedings.

## I.    FACTUAL AND PROCEDURAL HISTORY

Harper alleges the following facts leading up to and related to his termination from his position at the prison law library. On September 10, 2016, an allegedly false disciplinary report was written against Harper. The disciplinary hearing was conducted by Nakenya Weatherspoon and Joyce T. Burke. At the hearing, Weatherspoon asked Harper how he would like to plea. When Harper asked if he could address the report first, Weatherspoon and Burke became "extremely hostile, antagonistic, and intimidating." They yelled at him that he could not say anything and demanded his plea. Weatherspoon then entered a plea of no contest, even though Harper claims that he does not remember entering such a plea. Harper states that he

2

was intimidated and frightened by the situation and did not feel free to argue against such a plea.

Weatherspoon proceeded to ask Harper what he wanted to say about the charge. When he began to contest the veracity of the disciplinary report, Burke again yelled at him that any information about the incident was required to be submitted in a statement before the hearing. Before Harper could respond further, Weatherspoon declared Harper guilty of the charge and issued a penalty in the form of a change in his employment from the law library to food service for thirty days. Harper appealed this decision to the Warden, explaining the actions of Weatherspoon and Burke at the hearing. On September 29, 2016, the Warden denied his appeal.[1] Harper then appealed to the Office of the Secretary, who filed a grievance on November 2, 2016, on behalf of Harper based on the allegations in his appeal about Weatherspoon and Burke's conduct during the hearing.

Following his thirty days on food service duty, Harper returned to his job at the law library. On November 9, 2016, while he was working in the library, Weatherspoon and Burke entered the library and spoke with Lytonia Merritt. They discussed the grievance filed by Harper concerning the disciplinary hearing and "about what they could do to get back at [Harper]." Harper then heard Merritt state

---

[1] Following receipt of the grievance from the Office of the Secretary, the Warden later reversed his denial of the appeal, reversed the finding of guilt made at the disciplinary hearing, and granted other relief related to Harper's appeal.

3

that "I don't like him anyway, he thinks he's so smart, he loves this Law Library job, I've been looking for a way to get him out of here anyway." The three discussed the issue further and ultimately agreed to terminate Harper's employment at the law library. Following that exchange, Harper was removed from his law library position, Merritt posted a notice to fill his prior position, and Burke assigned him to inside grounds duty. About a week after he was terminated from his law library position, two guards, who are not parties in this action, passed Harper in the mess hall, smirked at him, and said "they kicked you out of the Law Library."

On December 14, 2016, Harper filed a second grievance with the Warden related to his removal from his law library job. On December 4, 2018, after waiting the requisite amount of time to exhaust his administrative remedies, and having received no response from the Warden, Harper filed a prisoner civil rights complaint under 42 U.S.C. § 1983. The magistrate judge granted Harper's motion to proceed *in forma pauperis* and ordered him to amend his complaint, calling the complaint a shotgun pleading that lacked sufficient factual allegations and was not provided in the correct complaint form with all the requisite information.

Harper then filed an amended complaint—this time in the correct form—that outlined the same factual allegations as in his initial complaint. The amended complaint raised the following claims: violations of the First Amendment against Weatherspoon, Burke, and Merritt for retaliating against Harper for the exercise of

4

his free speech rights; violations of the Eighth Amendment against Weatherspoon and Burke for issuing a punishment not authorized by the Florida Department of Corrections; violations of Fourteenth Amendment due process against Weatherspoon and Burke; and conspiracy against Weatherspoon, Burke, and Merritt for conspiring to retaliate against Harper for the exercise of his free speech and due process rights.

The magistrate judge issued a report and recommendation, recommending that the case be dismissed for failing to state a claim upon which relief may be granted. As to the due process claims, the magistrate judge concluded that the claims failed because the penalty alleged—a temporary removal from his law library position—does not constitute a deprivation of his liberty interests sufficient to invoke Fourteenth Amendment due process protections. The magistrate judge noted that, to the extent Harper argued his due process rights were violated because he was permanently removed from his job as a prison law clerk, the analysis is the same. As for the Eighth Amendment claims, the magistrate judge found that the thirty-day food service assignment did not amount to a penalty that disregarded a risk to Harper's health or safety or otherwise subjected him to inhumane conditions.

Turning to the First Amendment claims, the magistrate judge found that Harper's grievances and appeal of those grievances constituted protected speech that satisfied the first element of a First Amendment retaliation claim. But the magistrate

judge held that the claims failed based on the second and third elements of a free speech retaliation claim. As to the second element, the magistrate judge concluded that the amended complaint contained no allegations explaining why a person of ordinary firmness would be deterred from exercising their free speech because they were removed from their duties as a prison law clerk. As to the third element, the magistrate judge determined that Harper failed to establish a causal link between his grievances and Merritt's alleged retaliatory actions.

Harper filed objections to the report. The district court overruled those objections, adopted the magistrate judge's report and recommendation, and dismissed with prejudice the amended complaint. This timely appeal ensued.

## II. STANDARD OF REVIEW

We review *de novo* a district court's *sua sponte* dismissal of a § 1983 action under 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(ii). *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). When reviewing a dismissal for failure to state a claim, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 (11th Cir. 2013). *Pro se* pleadings are liberally construed and held to less stringent standards, but such pleadings must still suggest some factual basis for a claim. *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III.    ANALYSIS

On appeal, Harper challenges only the dismissal of his First Amendment retaliation claims and his conspiracy claim.[2]

#### A.    *First Amendment Retaliation*

Although an inmate has no constitutional right to retain a specific job within the prison, prison administrators are not permitted to grant or withhold such privileges for impermissible reasons—such as retaliating against an inmate for exercising his free speech rights. *Adams v. James*, 784 F.2d 1077, 1079–80 (11th Cir. 1986). The First Amendment forbids such retaliation. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To state a First Amendment retaliation claim, the inmate must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).

---

[2] Because Harper does not challenge the dismissal of his Eighth Amendment cruel and unusual punishment claims and his due process claims, he has abandoned those claims. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that issues not briefed on appeal, even by *pro se* parties, are deemed abandoned).

Here, Harper plausibly alleged each element of a retaliation claim against Merritt, Burke, and Weatherspoon. As the district court correctly found, the grievances filed by Harper relating to Weatherspoon and Burke's actions against him during his initial disciplinary hearing are protected speech under the First Amendment. *See Smith*, 532 F.3d at 1276 ("It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." (citing *Farrow*, 320 F.3d at 1248)).

The district court erred, however, in holding that Harper's retaliation claims failed as to the second and third elements. The adverse action alleged by Harper was the loss of a job as head law clerk in the prison law library—a position which he had held since 2012 after having been a law clerk for one year, and a position where he had received high performance reviews. Viewed in the light most favorable to Harper, the loss of this long-standing privilege at the hands of Merritt, Burke, and Weatherspoon, who each had significant control over Harper in their roles as prison officers, for no other reason than because Harper filed a grievance would deter a person of ordinary firmness from exercising his free speech rights. *See Bennett v. Hendrix*, 423 F.3d 1247, 1252, 1254 (11th Cir. 2005); *see also Smith*, 532 F.3d at 1275, 1277 (finding that disciplinary action that placed an inmate in temporary segregation and took away certain privileges satisfied the second element of a

8

retaliation claim).  At this preliminary pleading stage, then, the second element is satisfied.

As to the third element, "[t]he causal connection inquiry asks whether the defendants were subjectively motivated to discipline" because Harper filed a grievance.  *Smith*, 532 F.3d at 1278.  Harper alleged that just one week after his grievance was filed, he heard Merritt, Burke, and Weatherspoon discussing the grievance and how they could "get back at [him]" for filing it.  During that exchange, the three officers determined that the way to get back at him would be to terminate him from his law library position.  And shortly after that exchange, they did just that.  Harper alleged additional evidence suggesting retaliatory animus as the motivation behind his termination from the law library—following his termination and reassignment to a different position, two other guards smirked at Harper and stated that "they kicked [him] out of the Law Library."  Taking these allegations as true, Merritt, Burke, and Weatherspoon were "subjectively motivated to discipline [Harper] because [he] complained of" their actions in his filed grievance.  *See id.*  Moreover, Merritt, Burke, and Weatherspoon made the decision to terminate him despite the fact that Harper had held the law library position for about ten years, he had been promoted to head law clerk, and he received high performance reviews.  There was seemingly no other reason to terminate Harper from the law library

9

position besides the retaliatory motive to "get back at" him for the contents of his grievance.

The district court points to a statement made by Merritt during the conversation with Burke and Weatherspoon about what to do to Harper for the grievance—"I don't like him anyway, he thinks he's so smart, he loves this Law Library job, I've been looking for a way to get him out of here anyway"—as implying that Merritt would have fired Harper regardless of the grievance. As such, the district court held that Harper failed to satisfy the third element of his retaliation claim against Merritt. First, we disagree that this statement necessarily implies that Merritt would have fired Harper regardless of the grievance. The statement implies that Merritt wanted to fire him but needed a reason to do so, suggesting not only that there was no reason up until that point—again, supporting the fact that the only reason Merritt, Burke, and Weatherspoon terminated Harper was in retaliation for the grievance—but also that Merritt would not have terminated him until some reason arose. And such a reason may never have arisen—Harper had held that position for ten years with no incident and only positive reviews.

Furthermore, the district court misunderstood what is required of Harper at this stage of the litigation. Harper is only required to allege sufficient "facts to state a claim of retaliation by prison officials that is 'plausible on its face.'" *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*,

10

550 U.S. 544, 570 (2007)).  As to the causal connection element, Harper must allege

facts that, taken as true, show that "the adverse action was motivated at least in part

by [Harper's] protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (11th

Cir. 1999).  This initial establishment of a prima facie case is all that is required.  At

the summary judgment stage, Harper must prove this subjective motivation behind

the adverse action.  At which point, the burden of production shifts to the defendants.

Merritt must then prove that she "would have taken the same action in the absence

of the protected activity" in order to defeat liability.  *Smith*, 532 F.3d at 1278

(quoting *Thaddeus-X*, 175 F.3d at 399).  Harper has sufficiently alleged facts that

state a prima facie case on his First Amendment retaliation claims against Merritt,

Burke, and Weatherspoon.  The district court therefore erred in dismissing his

amended complaint as to these claims.

### B.    *Conspiracy to Retaliate*

Harper argues that the magistrate judge and the district court both failed to

address his § 1983 conspiracy to retaliate claim.  In his amended complaint, Harper

listed as a legal claim that Merritt, Burke, and Weatherspoon "conspired together"

to retaliate against him for exercising his free speech rights.  Although it may not

have been clear that he was raising separate First Amendment retaliation and

conspiracy to retaliate claims, Harper alleged facts that suggest a conspiracy and did

object to the report and recommendation for failing to consider a separate conspiracy

11

claim.   Construing the amended complaint liberally, Harper raised a separate

conspiracy to retaliate claim.   The district court therefore erred by not addressing

this separate claim or Harper's objections related to it.

To state a § 1983 conspiracy claim, Harper must first plausibly allege an

underlying denial of his constitutional rights.   *GJR Investments, Inc. v. County of*

*Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998).   As outlined above, Harper

plausibly alleged First Amendment retaliation—an actionable wrong that may

underlie a § 1983 conspiracy claim.   Harper must also show that the defendants

"reached an understanding to violate [his] rights."   *Rowe v. City of Fort Lauderdale*,

279 F.3d 1271, 1283 (11th Cir. 2002) (quoting *Strength v. Hubert*, 854 F.2d 421,

425 (11th Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor*, 85

F.3d 581, 584 n.4 (11th Cir. 1996)).   Harper "does not have to produce a 'smoking

gun' to establish the 'understanding' or 'willful participation' required to show a

conspiracy, but must show some evidence of agreement between the defendants."

*Id.* at 1283–84 (citations omitted).   The specific allegations related to the meeting

between Merritt, Burke, and Weatherspoon, during which they discussed the

grievance and how to "get back at" Harper—ultimately agreeing during that meeting

to terminate him from his law library position—is seemingly sufficient at this stage.

Because the district court failed to address the conspiracy to retaliate claim, and

because it is not readily apparent why the claim is due to be dismissed as a matter of

12

law, we vacate and remand on this claim as well. *See Simmons v. Wainwright*, 462 F.2d 1340, 1342 (5th Cir. 1972)[3] ("Because of the district court's failure to enter findings and conclusions with respect to all of the appellant's claims under 42 U.S.C. § 1983, we are compelled to vacate the judgment below, and remand the cause.").

## IV.    CONCLUSION

For the foregoing reasons, we vacate the order dismissing with prejudice Harper's amended complaint as to his First Amendment retaliation claim and his § 1983 conspiracy to retaliate claim and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[3] We adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).