[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11380; 19-11397

_____

D.C. Docket No. 1:17-cv-23958-UU


BEACH BLITZ CO.,
d.b.a. Ocean 9 Liquor,
d.b.a. Ocean 11 Market,

Plaintiff - Appellant
Cross Appellee,

versus

CITY OF MIAMI BEACH, FLORIDA,
a municipal corporation of the State of Florida,
PHILIP LEVINE,
an individual,
JIMMY L. MORALES,
an individual,
MICKEY STEINBERG,
an individual,
RICKY ARRIOLA,
an individual,
MICHAEL GREICO,
an individual,
JOY MALAKOFF,
an individual,
KRISTEN ROSEN GONZALEZ,
an individual,

JOHN ELIZABETH ALEMAN,
an individual,
RAUL J. AGUILA,
an individual,
ALEKSANDR BOKSNER,
an individual,

Defendants - Appellees
Cross Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 21, 2021)

Before JILL PRYOR, NEWSOM, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal concerns a dispute about attorney's fees, specifically, who was the prevailing party, and whether the claims were frivolous.  On October 30, 2017, Beach Blitz Co. d/b/a Ocean 9 Liquor and d/b/a Ocean 9 Market ("Beach Blitz") sued the City of Miami Beach ("the City") and ten individual defendants (the "Individual Defendants") asserting three procedural due process claims, a substantive due process claim, and a First Amendment retaliation claim.  Beach Blitz alleged that the City's enactment and enforcement of ordinances regulating the sale of liquor and requiring businesses selling liquor to obtain licenses violated its substantive and procedural due process rights.  It further alleged that the City's

2

closure of its store one day after it met with a City attorney constituted retaliation for Beach Blitz's protected First Amendment conduct. The City sought to dismiss Beach Blitz's claims pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). The district court granted the City's motion, dismissing the procedural and substantive due process claims on the merits, without prejudice, and without leave to amend, and the First Amendment retaliatory claim on the merits as well, without prejudice but with leave to amend. Beach Blitz did not amend its First Amendment claim by the stated deadline and the district court dismissed that claim too.

The district court found the City to be the prevailing party on all five claims, determined that each of them were "frivolous, unreasonable, or without foundation," Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978), and awarded fees for each. We agree with the district court's prevailing party determination because the City rebuffed Beach Blitz's efforts to effect a material alteration in the legal relationship between the parties. We also agree with the district court's frivolity determination concerning the procedural and substantive due process claims. We think, however, that Beach Blitz's First Amendment retaliation claim was not frivolous. We, therefore, affirm in part, vacate in part, and remand this case to the district court to recalculate the attorney's fees to which the City is entitled on the procedural and substantive due process claims.

I.

The essential facts necessary to understanding the instant appeal are these:

A. **The Ordinances.**

In 2016, a City Commission passed several ordinances regulating the sale of liquor in the mixed entertainment use area of South Beach (the "MXE District")[1] after determining that the sales were having a negative effect on the health, safety, and welfare of the City's residents and visitors. Some of the ordinances limited the times during which liquor could be sold by package liquor stores in the MXE district to between 10 a.m. and 10 p.m. The Commission also considered an ordinance that would prohibit sales after 8 p.m. In addition, the City adopted an ordinance prohibiting package liquor stores and package sales of alcoholic beverages by any retail store or alcoholic beverage establishment within the MXE District. This ordinance did not affect the operation of existing package stores in the MXE district. The Commission Memorandum supporting the ordinance explained that "[p]ackage sales of alcoholic beverages may encourage patrons to walk around with alcoholic beverages and consume alcoholic beverages in the City's parks, and on the City's streets and sidewalks." The Memorandum further noted that "[t]he consumption of open containers of alcoholic beverages in public

---

[1] The MXE district is comprised of the area between Ocean Drive and Washington Avenue and Fifth Street and Fifteenth Street.

4

places may cause undesirable noise, as well as contribute to litter and noxious odors."

## B. BTR License and Beach Blitz.

The City Code requires every business operating in the City to pay a business tax, for which it receives a Business Tax Receipt ("BTR license" or "BTR"), "for the privilege of engaging in or managing any business, profession, or occupation within the city."  Code of the City of Miami Beach, Florida §§ 102-356, 102-357 (the "City Code").  Each BTR is valid for one year -- the City issues on October 1 each year and the BTR expires on September 30 of the following year.  City Code § 102-360.

Beach Blitz owned and operated Ocean 9 Liquor, a package liquor store in the MXE District.  Beach Blitz applied for and renewed its BTR license for the 2015–16 fiscal year.  The BTR license expired on September 30, 2016, and Beach Blitz did not timely renew it.

Between December 2016 and June 2017, Beach Blitz received three citations related to its Ocean 9 store.  The first citation, issued on December 21, 2016, cited Beach Blitz for selling liquor before 10:00 a.m. and imposed a $1,000 fine.  It provided Beach Blitz 20 days to appeal the citation to a Special Master.  The latter two citations were both issued on June 25, 2017.  The first was for selling liquor after 10:00 p.m. and imposed a $1,000 fine.  The second was a Notice of Violation

5

of Section 102-377 for "failure to obtain a Business Tax Receipt," which also imposed a $1,000 fine.  The Notice expressly directed Beach Blitz to "[c]ease immediately until you obtain a Business Tax Receipt from the City of Miami Beach."  Both citations provided Beach Blitz with 10 days to appeal to a Special Master.  Beach Blitz did not appeal any of the citations within the time frames provided.  As a result, the citations were considered obligations due and owed to the City as of the date the time to appeal expired.

On August 28, 2017, Beach Blitz reached an agreement with the City Attorney's Office to resolve all three citations for $1,000.  The settlement did not include the payment owed for a BTR license.  On September 28, 2017,[2] the Special Master entered an agreed order in which Beach Blitz admitted to the violations and agreed to pay $1,000 to resolve all three citations.  On or about October 4, 2017, Beach Blitz paid the $1,000 fine pursuant to the consent agreement.  But Beach Blitz did not submit payment for a BTR license on that date, nor did it submit payment to the City to renew its BTR license at any point during the 2016–2017 fiscal year (from October 1, 2016 to September 30, 2017).

On October 5, 2017, Beach Blitz's counsel met with City representatives and the deputy city attorney.  During this meeting, Beach Blitz's lawyer stated that he

---

[2] The Special Master's office did not execute the order until September 28, 2017 because of Hurricane Irma.

believed the ordinances enacted were "arbitrary, capricious, unreasonable and designed to force the package stores out of business in the MXE district."

On October 6, 2017, the City issued another citation to Beach Blitz for continuing to operate without a BTR license. The citation directed Beach Blitz to "[c]ease [operating] immediately until you obtain a Business Tax Receipt from the City of Miami Beach." Beach Blitz alleged that following the closure, the deputy city attorney advised its counsel that the City's actions "were not likely coincidental and a long time coming." On October 11, 2017, Beach Blitz submitted payment to the City to renew its BTR license. Because Beach Blitz had not renewed its license in the fiscal year after its expiration, its license had been placed in "closed" status. Beach Blitz, therefore, needed to submit a new BTR license application pursuant to § 102-371 of the City Code in order for the City to act on a request for the BTR license.

## C. **Prior Proceedings.**

On October 30, 2017, Beach Blitz filed the instant action in the Southern District of Florida asserting three procedural due process claims (Counts I, II, and V), a substantive due process claim (Count III), and a First Amendment retaliation claim (Count IV) against the City and ten individual defendants.[3] Beach Blitz

---

[3] Beach Blitz also brought two claims against the City and the Individual Defendants alleging that they exceeded the authority delegated to them by the State of Florida in passing the relevant

alleged that the City violated its procedural due process rights by "establish[ing] a custom, policy, pattern and practice of unlawfully targeting package stores in the MXE district." Beach Blitz further alleged that the City violated its procedural due process rights by "wrongfully threaten[ing] and wrongfully coerc[ing] . . . [Plaintiff] to shut down" its business and that the City Code's "authorization to prevent a business from operating until [it obtains] the required BTR without requiring due process, violates the United States Constitution." Beach Blitz also claimed that it had a "liberty and/or property interest in conducting its lawful business of selling alcohol," and "[t]he City's unilateral and arbitrary suspension of [its] BTR license and resulting closure of its business [was] without due process of law" and, therefore, violated its substantive due process rights. Finally, Beach Blitz's First Amendment retaliation claim arose from the fact that the day after Beach Blitz's attorney met with the deputy city attorney to discuss Beach Blitz's concerns with the ordinances, the City shut down Beach Blitz's Ocean 9 store, and the deputy city attorney later remarked that the closure was "not likely coincidental and a long time coming."

Shortly after filing its complaint, Beach Blitz filed an emergency motion for preliminary injunctive relief challenging the City's October 6, 2017 closure of its

---

ordinances (Counts VI and VII). Beach Blitz voluntarily dismissed Counts VI and VII after the City filed its motion to dismiss, so we only address Counts I through V.

liquor store.  The district court denied the motion, concluding that Beach Blitz was not likely to succeed on any of its § 1983 claims.

The City then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the complaint was baseless and failed to state any federal causes of action under § 1983.

On February 5, 2018, the district court dismissed Counts I, II, III, and V of the complaint without prejudice <u>and</u> without leave to amend.  The court found that the individual defendants were entitled to absolute immunity; that Beach Blitz failed to state a procedural due process claim since it did not allege that it attempted to avail itself of any state remedies; and that Beach Blitz failed to state a substantive due process claim because it had not alleged facts sufficient to show that any substantive liberty or property interest had been infringed upon by the City's actions.  As for Count IV, Beach Blitz's First Amendment retaliation claim, the court held that the complaint failed to establish a causal connection between Beach Blitz's protected speech and any action taken by the defendants.  Finding that amendment might not be futile, however, the court dismissed Count IV without prejudice <u>and</u> with leave to amend, permitting Beach Blitz to file an amended Count IV containing "sufficient factual allegations to establish Plaintiff's speech during the meeting was the 'motivating factor behind' the Code Enforcement Officer's October 6, 2017 issuance of the Second BTR Violation and

closure of Ocean 9." But Beach Blitz did not file an amended complaint concerning Count IV, and the district court dismissed this claim too without prejudice, entered judgment for the City, and closed the case on February 15, 2018, denying Beach Blitz any further opportunity to amend its pleadings.

On April 6, 2018, the defendants moved to recover attorney's fees pursuant to 42 U.S.C. § 1988. The district court found the City to be the prevailing party, noting that its dismissal order "effected a sufficient alteration in the legal relationship of the parties" so that the defendants could be considered the prevailing party.[4] The court also found each of Beach Blitz's claims to be groundless, frivolous, unreasonable, or without foundation since Beach Blitz failed to establish a prima facie case on any of its claims, the City never made an offer of settlement, and the case was dismissed early on in the proceedings. The court noted that it did not need to "grappl[e] with a nuanced or novel area of the law or . . . mak[e] a close call in dismissing any of [Beach Blitz's] claims," and this weighed in favor of a finding of frivolity. Therefore, the court held that it could award attorney's fees to the City.

The defendants sought to recover a total of $290,453.60 in attorney's fees. After thorough review and a detailed explanation of its reasoning, the magistrate

---

[4] In an initial Report & Recommendation that was rejected by the district court, the magistrate judge had recommended that the motion be denied, concluding that the City was not the prevailing party.

judge determined that the defendants should be awarded $132,785.85 in attorney's fees.  The district court adopted the magistrate judge's Report & Recommendation, concluding that the magistrate judge properly:  "(1) reviewed the categories of fees stage-by-stage of the litigation . . . (2) determined whether the fees incurred were excessive for that stage; and (3) where he answered that question in the affirmative, applied a percentage reduction."  The court also concluded that the magistrate judge "was reasonably specific, under the circumstances, as to why each particular percentage reduction was appropriate for each category of work."  The court issued a final judgment awarding attorney's fees in the amount of $132,785.85 in favor of the City.

Beach Blitz timely appealed the district court's prevailing party determination, and the City cross-appealed, asserting that the district court abused its discretion by reducing the fee award.

## II.

We turn first to the district court's conclusion that the City was entitled to attorney's fees.  "It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees." Christiansburg, 434 U.S. at 415.  "But Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another."  Fox v. Vice, 563 U.S. 826, 832 (2011).  Title 42 U.S.C. § 1988 falls

11

into this category, providing that "[i]n any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).

Because Congress intended for prevailing defendants to recover fees only when forced to defend suits "having no legal or factual basis," Christiansburg, 434 U.S. at 420, a defendant may recover attorney's fees "only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Hughes v. Rowe, 449 U.S. 5, 14 (1980) (quotation marks omitted); accord CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) ("When a defendant is the prevailing party on a civil rights claim, the Court has held, district courts may award attorney's fees if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'") (quoting Christianburg, 434 U.S. at 422).

We review the factual findings underlying the district court's prevailing party determination for clear error.  See Church of Scientology Flag Serv., Org., Inc. v. City of Clearwater, 2 F.3d 1509, 1512–13 (11th Cir. 1993).  "Whether the facts as found suffice to render the plaintiff a 'prevailing party' is a legal question reviewed de novo."  Id. at 1513.

12

We review the "determination that a plaintiff's case was so frivolous, unreasonable, or groundless, as to justify an award of fees under" 42 U.S.C. § 1988 for abuse of discretion.  See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005) (internal citation and quotation marks omitted).  A "'district court by definition abuses its discretion when it makes an error of law.'"  Quintana v. Jenne, 414 F.3d 1306, 1309 (11th Cir. 2005) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  "[W]hen determining whether a claim was or became frivolous, we view the evidence in the light most favorable to the non-prevailing plaintiff."  Johnson v. Florida, 348 F.3d 1334, 1354 (11th Cir. 2003) (citing E.E.O.C. v. Pet, Inc., 719 F.2d 383, 384 (11th Cir. 1983)) (emphasis in original).

## A.

Our first question is whether the City was the prevailing party.  In CRST Van Expedited, Inc. v. E.E.O.C., the Supreme Court emphasized a "[c]ommon sense" approach to the prevailing party determination, and observed that since plaintiffs and defendants seek different outcomes in court, the prevailing party determination is different for each party:

> Plaintiffs and defendants come to court with different objectives.  A plaintiff seeks a material alteration in the legal relationship between the parties.  A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor.  The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations.  The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.  The

13

defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

136 S. Ct. at 1651.  CRST highlighted "the asymmetry in the parties' litigation objectives, which affects the showing that each party must make to achieve prevailing-party status" and held that a defendant "prevails 'whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.'"  Robinson v. O'Rourke, 891 F.3d 976, 982 (Fed. Cir. 2018) (quoting CRST, 136 S. Ct. at 1651); see also B.E. Tech., L.L.C. v. Facebook, Inc., 940 F.3d 675, 679 (Fed. Cir. 2019), cert denied, 141 S. Ct. 618 (2020) ("Facebook obtained the outcome it sought via the mootness dismissal; it rebuffed B.E.'s attempt to alter the parties' legal relationship in an infringement suit . . . . CRST explains that a defendant, like Facebook, can prevail by 'rebuffing' plaintiff's claim, irrespective of the reason for the court's decision.").  Of course, in order to confer prevailing party status, the rejection of the plaintiff's attempt to alter the parties' legal relationship "must be marked by 'judicial imprimatur.'"  CRST, 136 S. Ct. at 1646 (citation omitted).

Accordingly, to determine whether the City was the prevailing party in this case, we ask whether the district court's judgment rebuffed Beach Blitz's efforts to effect a material alteration in the legal relationship between the parties.  See B.E. Tech., L.L.C., 940 F.3d at 679 ("[I]n identifying a prevailing party, we must consider whether the district court's decision 'effects or rebuffs a plaintiff's

14

attempt to effect a material alteration in the legal relationship between the parties.'") (citation and quotation marks omitted).  Put another way, we conduct a practical examination of whether "the case [was] resolved in the defendant's favor."  See CRST, 136 S. Ct. at 1652.

The district court's order rebuffed Beach Blitz's attempt to alter its legal relationship with the defendants, thereby resolving the litigation in the defendants' favor.  The district court dismissed Counts I, II, III, IV, and V for failure to state a claim.  It also denied Beach Blitz the opportunity to amend Counts I, II, III, and V since amendment would be futile.  The court initially offered Beach Blitz the opportunity to amend Count IV, but Beach Blitz failed to do so, and the court dismissed Count IV and closed the case, denying Beach Blitz all further opportunity to amend its pleadings.

To state the obvious, this dismissal was involuntary.  The district court acted in response to the defendants' motion to dismiss, a motion Beach Blitz opposed.  Beach Blitz wanted the court to find that, at all times, Beach Blitz was in compliance with the City's laws and ordinances -- including the requirement to obtain a BTR license.  It sought a judgment finding that rules restricting the period in which alcohol may be sold were unduly vague, unconstitutional, and discriminatory, and that the City's shutdown of Beach Blitz's Ocean 9 store constituted an unconstitutional taking and a retaliatory response to its protected

15

First Amendment conduct.  But the district court refused to issue such a judgment and dismissed Beach Blitz's claims; it then denied leave to amend.  Thus, we have little difficulty concluding that Beach Blitz's attempt to alter its legal relationship with the City was "rebuffed," CRST, 136 S. Ct. at 1651, and that the district court's dismissal placed the requisite judicial imprimatur on the parties' legal relationship.  Cf. United States v. $70,670.00 in U.S. Currency, 929 F.3d 1293, 1303 (11th Cir. 2019), cert. denied sub nom. Salgado v. United States, 140 S. Ct. 2640 (2020) (holding that a dismissal as a result of a motion for voluntary dismissal "places no judicial imprimatur on the legal relationship of the parties, which is the touchstone of the prevailing party inquiry" (quotation marks omitted)).

Still another indicator that Beach Blitz's attempt to alter its legal relationship with the City was rebuffed is the fact that the district court's judgment dismissed Beach Blitz's claims on the merits in the sense that the court "pass[ed] directly on the substance of" Beach Blitz's claims.  See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501–02 (2001) (quoting Restatement (Second) of Judgments § 19, cmt. a(1980)).  We know this not from a review of the district court's opinion, but rather because the district court issued its judgment in response to the City's Rule 12(b)(6) motion for failure to state a claim upon which relief could be granted.  See N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990) (holding

16

that a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'" even where the district court does not state whether the claims were dismissed with or without prejudice) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981)); see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2373 (4th ed. Apr. 2021 update) (stating that "dismissals under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted ordinarily are deemed to be a merit adjudication"); Fed. R. Civ. P. 41(b) (explaining that "[u]nless the dismissal order states otherwise," a dismissal under 12(b)(6) "operates as an adjudication on the merits"); Hall v. Tower Land & Inv. Co., 512 F.2d 481, 483 (5th Cir. 1975)[5] ("The trial court's dismissal of Hall's first complaint under Fed. R. Civ. P. 12(b) falls directly under the wording of Rule 41(b), and cases have held that such decisions operate as adjudications on the merits. Moreover, this Circuit has held that granting defendant's motion to dismiss for plaintiff's failure to state a claim upon which relief can be granted operates as an adjudication on the merits . . . .") (citations omitted); Shakeri v. ADT Sec. Servs., Inc., 816 F.3d 283, 292 (5th Cir. 2016) (same).

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

Contrast, for example, the $70,670.00 in U.S. Currency order permitting the government to voluntarily dismiss its forfeiture complaint. There the court had not issued "a 'final judgment rejecting the government's claim' to the defendant funds." 929 F.3d at 1303 (citing CRST, 136 S. Ct. at 1651) (alterations adopted). Not so for the order in this case. The defendants here did obtain a final judgment rejecting each of Beach Blitz's § 1983 claims. Accordingly, there is no question that Beach Blitz's claims have been fully adjudicated and rebuffed with judicial imprimatur. Cf. id. at 1304 (party had not "substantially prevailed because the government's claim of superior title to her share of the funds remain[ed] unadjudicated"). The defendants "prevented [Beach Blitz] from achieving a material alteration of the relationship between them" by obtaining "a decision marked by 'judicial imprimatur,'" thereby "receiv[ing] all relief to which they were entitled." Raniere v. Microsoft Corp., 887 F.3d 1298, 1306–07 (Fed. Cir. 2018) (quoting CRST, 136 S. Ct. at 1646). Under the "[c]ommon sense" approach adopted by the Supreme Court in CRST, 136 S. Ct. at 1651, the City was the prevailing party in this lawsuit.

The only problem in this otherwise simple case arises from the district court's confusing handling of its judgment. On one hand, it granted a Rule 12(b)(6) motion to dismiss for failure to state a claim. As we have explained, this posture generally signals a judgment on the merits. But on the other hand, the

district court dismissed Beach Blitz's claims "without prejudice."  And this phrase normally communicates that a dismissal is not on the merits.  See Salcedo v. Hanna, 936 F.3d 1162, 1173 n.12 (11th Cir. 2019).  It is not easy to reconcile these inconsistent features of the district court's judgment, and they point in different directions on the question of whether the judgment would be claim preclusive in a future action between the same parties raising the same claims.  Final merits judgments are, as a rule, claim-preclusive, see Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003); then again, we usually understand "without prejudice" to mean that a judgment is not claim-preclusive, see Hughes v. Lott, 350 F.3d 1157, 1161 (11th Cir. 2003).  Of course, a claim-preclusive judgment would be a further indication that Beach Blitz was fully rebuffed and that the City prevailed.  Cf. $70,670.00 in U.S. Currency, 929 F.3d at 1303 (voluntary dismissal order did not confer prevailing party status because it "pose[d] 'no legal bar precluding the government from refiling the same forfeiture action in the future'").

But we need not decide today whether the judgment dismissing this case is claim preclusive, because even setting aside the issue of preclusive effect, we have plenty of reasons to conclude that Beach Blitz was rebuffed.  The judgment was involuntary and carried judicial imprimatur, denied leave to amend, and resulted from a Rule 12(b)(6) merits determination.  As a matter of "[c]ommon sense," it plainly rebuffed Beach Blitz's attempt to alter its legal relationship with the City

19

and "resolved [the case] in the defendant's favor." See CRST, 136 S. Ct. at 1651–52; cf. B.E. Tech., L.L.C., 940 F.3d at 679 (rejecting the plaintiff's argument that a mootness dismissal could not confer prevailing party status because the dismissal lacked preclusive effect and noting that this argument "put[] form over substance and conflict[ed] with the common-sense approach outlined in CRST"). A "without prejudice" label, without more, cannot alter our conclusion in this case: in every practical sense, the district court rebuffed Beach Blitz's effort to alter its legal relationship with the City. We, therefore, leave to a future court the difficult task, should the need arise, of reconciling the contradictory features of the district court's judgment in order to determine whether it has preclusive effect. We do, however, caution district courts to make sure that the wording of each judgment matches its content and procedural posture in order to avoid similar confusion in other cases.

Finally, a brief word on our colleague's conclusion that CRST set forth a bright-line rule that a defendant prevails "whenever it secures an involuntary dismissal" of any kind. Concurring Op. at 37. We are not so sure, but we need not decide this matter today. Nothing in the Supreme Court's opinion goes that far. CRST held that a favorable ruling on the merits is not necessary for prevailing party status and remanded for further consideration of whether the judgment at issue in that case -- a dismissal of EEOC claims for failure to conduct statute-

mandated pre-suit investigations and conciliations, the preclusive effect of which was disputed -- rendered the defendant a prevailing party.  136 S. Ct. at 1651, 1653–54.  Indeed, CRST expressly "decline[d] to decide" whether "a defendant must obtain a preclusive judgment in order to prevail."  Id. at 1653.  It would be odd indeed for the Supreme Court to have reserved that issue if it had understood itself to be announcing a broad rule that all involuntary dismissals, some of which will be non-preclusive, will render the defendant a prevailing party.

We need not lay down so broad a rule ourselves in order to resolve this case.  As we have explained, the involuntary Rule 12(b)(6) dismissal coupled with denial of leave to amend clearly rebuffed with the court's imprimatur Beach Blitz's attempt to alter its legal relationship with the City.  To be sure, some of our sister circuits have held after CRST that certain types of non-merits involuntary dismissals confer prevailing party status.  See B.E. Tech., L.L.C., 940 F.3d at 679 (dismissal for mootness); Raniere, 887 F.3d at 1301, 1303 (dismissal "with prejudice" for lack of standing); In re Nat. Gas Royalties Qui Tam Litig., 845 F.3d 1010, 1025–26 (10th Cir. 2017) (dismissal for failure to meet the False Claims Act's subject-matter-jurisdictional requirement that a plaintiff relying on certain public information be the original source of the information); Amphastar Pharms. Inc. v. Aventis Pharma SA, 856 F.3d 696, 701, 710 (9th Cir. 2017) (same type of False Claims Act original source jurisdictional dismissal where the defendant had

21

"spent eight years, quite a bit of money, and quite a bit of energy, fighting [the] lawsuit").

Even if we assume these cases were correctly decided -- and we take no position of our own on these matters -- it remains an open question whether other types of non-merits involuntary dismissals should confer prevailing party status. Consider, for example, certain types of involuntary dismissals that, in some cases, may permit the plaintiff to immediately re-file the exact same claims against the exact same defendant, albeit in an alternative forum. These may include involuntary dismissals for lack of personal jurisdiction, pursuant to a mandatory arbitration clause, or for forum non conveniens. It is not obvious to us whether or not a court in such cases can truly be said to have rebuffed the plaintiff's attempt to alter its legal relationship with the defendant or to have resolved the litigation in the defendant's favor. Other courts operating after CRST have taken differing positions on these issues. Compare Cortés-Ramos v. Sony Corp. of Am., 889 F.3d 24, 25–26 (1st Cir. 2018) (holding that a dismissal "with prejudice" compelling arbitration did not confer prevailing party status under the Copyright Act because the same substantive claims would be heard in an alternative forum) with Megna v. Biocomp Lab'ys Inc., 225 F. Supp. 3d 222, 225 (S.D.N.Y. 2016) (holding that a dismissal for lack of personal jurisdiction conferred prevailing party status); see also Manhattan Rev. LLC v. Yun, 919 F.3d 149, 153 (2d Cir. 2019) (noting that a

22

previous decision holding that "a defendant who had obtained a dismissal on forum non conveniens grounds was not a prevailing party because the plaintiff could pursue his claims against the defendant in another forum" might or might not retain "vitality . . . in the wake of CRST"). This case does not raise these questions. Because we have little difficulty concluding that the involuntary Rule 12(b)(6) dismissal without leave to amend in this case rendered the City a prevailing party, we leave these issues for resolution in the future.

B.

We turn then to the second question -- the propriety of the district court's determination that each of Beach Blitz's claims was "frivolous, unreasonable, or without foundation." This Court has said that the frivolity of a claim must be determined on a case-by-case basis. Sullivan v. Sch. Bd. of Pinellas Cnty., 773 F.2d 1182, 1190 (11th Cir. 1985). In determining whether a suit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Jones v. Tex. Tech Univ., 656 F.2d 1137, 1145 (5th Cir. 1981). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Hughes, 449 U.S. at 14. Even if a plaintiff's allegations are ultimately "legally insufficient to require a trial," that

alone is not enough to render the plaintiff's cause of action "groundless" or "without foundation." Id. at 15–16.

In Sullivan, a panel of this Court identified several factors relevant to the determination of frivolity: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or had a full-blown trial on the merits." 773 F.2d at 1189. "The Sullivan factors . . . are 'general guidelines only, not hard and fast rules.'" Cordoba, 419 F.3d at 1177 (quoting Sullivan, 773 F.2d at 1189).

In addition to the three Sullivan factors, this Court has recognized a fourth consideration: whether there was enough support for the claim to warrant close attention by the court. "Our circuit has held that the plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and review." Busby v. City of Orlando, 931 F.2d 764, 787 (11th Cir. 1991). This fourth concern is a particularly important one. Indeed, when the plaintiff's claim warranted close attention, we have held that a district court abused its discretion in awarding fees, even when the other guideposts pointed toward finding the claim frivolous. See Cordoba, 419 F.3d at 1181–82.

24

1.

For starters, we address the district court's frivolity determination with respect to the procedural due process claims (Counts I, II, and V). Count I of the complaint sought declaratory and injunctive relief and asserted that the City's actions in failing to comply with § 102-377(b) -- which sets forth the process for enforcement of the City Code's BTR provisions -- and in closing Beach Blitz's Ocean 9 store were unconstitutional and inconsistent with due process. Count II sought declaratory and injunctive relief and damages based upon the City's alleged unlawful targeting of package stores, clubs, and restaurants in the MXE district, and specifically, the City's alleged targeting of Beach Blitz's Ocean 9 store. Count V sought declaratory and injunctive relief based on vagueness grounds allegedly inherent in § 102-377 of the City Code.

The first Sullivan factor -- whether the plaintiff has established a prima facie case -- weighs in favor of finding frivolity because Beach Blitz's procedural due process claims were dismissed on the merits and without leave to amend. Beach Blitz had failed to allege a constitutionally inadequate process. The district court observed that "the Complaint [did] not contain a single allegation that the state failed to provide Plaintiff with adequate process." Further, as for Count II, the court found that Beach Blitz failed to plead a custom or practice as required

25

under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690–91 (1978).

The remaining Sullivan factors similarly weigh in favor of finding frivolity: the City never offered to settle the procedural due process claims, and the complaint was dismissed at the pleading stage.  The fourth consideration -- whether the claims were sufficiently meritorious to receive careful attention and review -- also weighs in favor of finding frivolity.  The district court was not required to grapple with a novel area of law, nor was there any case law supporting the claims.  Cf. Cordoba, 419 F.3d at 1181–82 (finding the district court's award of fees was an abuse of discretion where the plaintiff's claims "though weak, were not entirely 'without foundation'" (citation omitted)); Busby, 931 F.2d at 787 ("The fact that one judge on this panel disagrees over the disposition of the directed verdict against Walsh demonstrates that this Court had to consider Busby's claims against him very carefully.").  Quite to the contrary, Beach Blitz's procedural due process claims were dismissed based on long-established precedent.

We affirm the district court's finding of frivolity with respect to Counts I, II, and V.

2.

We reach the same result on the substantive due process claim (Count III). As for this count, Beach Blitz asserted that it had a substantive due process right in "retaining" its BTR license, in conducting its business through the sale of alcohol, and in receiving income from such sales. The district court held that Beach Blitz "failed to assert the violation of a substantive right to run its business and derive income from its operation," and noted that to the extent Beach Blitz asserted arbitrary and irrational government action, by its "own admission, the Ordinance [was] rationally based on the City's desire to protect the health, safety, and welfare of the City's residents and visitors." Beach Blitz cannot now reasonably claim that the complaint contained sufficient factual allegations to establish a prima facie case for a substantive due process violation. The first Sullivan factor plainly weighs in favor of a finding of frivolity.

Furthermore, the City never offered to settle Beach Blitz's substantive due process claim which was dismissed at the pleading stage -- the second and third Sullivan factors weigh in favor of a finding of frivolity. Lastly, we consider whether the substantive due process claim was sufficiently meritorious to receive careful attention and review. It was not. There was no support in the case law for this claim, which was dismissed based on long-established precedent in the Supreme Court and in this Circuit. See, e.g., Coll. Sav. Bank v. Fla. Prepaid

27

Postsecondary Educ. Expense Bd., 527 U.S. 666, 675(1999) (holding there is no fundamental property right in "the activity of doing business, or the activity of making a profit") (emphasis omitted); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (noting that a property interest created by state law does not receive the protection of substantive due process).

Beach Blitz's substantive due process claim was frivolous.

3.

Finally, we address Beach Blitz's First Amendment retaliation claim (Count IV), which was, like the other claims, dismissed without prejudice but unlike the others, with leave to amend. In Count IV, Beach Blitz claimed that it engaged in conduct protected by the First Amendment when its attorney met with deputy city attorney Aleksandr Boksner to lobby the City against a proposed ordinance that would bar it from selling liquor after 8 p.m. The complaint stated, "[i]n response to Plaintiff's speech, on the very next day [after Beach Blitz's attorney met with Boksner] . . . officers ordered the immediate closing of Plaintiff's store." Beach Blitz further alleged that shortly after officers closed Beach Blitz's store, Boksner told Beach Blitz's attorney that the City's recent actions -- which can be reasonably understood as the City's closure of the store -- were "not likely coincidental and a long time coming." The district court concluded that Beach Blitz failed to allege sufficient facts to state a claim for retaliation. It determined

28

that because Beach Blitz was operating its store without a valid BTR at the time of

the store's closure, and had been cited for operating the store without a valid BTR

three months earlier, the complaint failed to allege sufficient facts to show that

Beach Blitz's "protected conduct was the 'motivating factor behind the defendants'

actions.'"

For the same reasons we applied to Beach Blitz's procedural and substantive

due process claims, the three Sullivan factors also weigh in favor of a finding of

frivolity.  As for the first one, the district court held that Beach Blitz failed to state

a First Amendment retaliation claim, Beach Blitz did not appeal the dismissal, and

it cannot now argue that the court erred in granting the motion to dismiss.  As for

the second one, the City did not offer to settle this claim, and as to the third factor,

the claim was dismissed at the pleading stage.

The last consideration -- whether Count IV was sufficiently meritorious to

receive careful attention and review -- is a different question.  Cf. Cordoba, 419

F.3d at 1181–83 (holding that the district court's frivolity determination was an

abuse of discretion even regarding claims that "were weak" and a theory that "was

close" to being frivolous).  There was sufficient support in our prior caselaw for

Beach Blitz's position that its retaliation claim was not so groundless on causation

as to be frivolous.  See Bailey v. Wheeler, 843 F.3d 473 (11th Cir. 2016); Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).

In Bailey, a city police officer was fired after he reported that officers in both the city police department and the county sheriff's department were engaged in racial profiling.  843 F.3d at 477.  Bailey appealed his termination, arguing that it was the result of speaking out against racial profiling.  Id. at 478–79.  Two deputies with the county sheriff's department followed Bailey as he drove home the night after a hearing on his appeal, and the next day, Major Wheeler of the sheriff's department issued a countywide, be-on-the-lookout ("BOLO") advisory with Bailey's picture, warning that Bailey was a "loose cannon" who "presented a danger to any law-enforcement officer."  Id. (alteration adopted) (quotation marks omitted).  Bailey was reinstated a few weeks later, and upon his return to work, the police chief informed Bailey that he could contact the sheriff's office to have the BOLO cancelled.  Id.

Bailey sued Wheeler claiming First Amendment retaliation.  The district court denied Wheeler's motion to dismiss based on qualified immunity.  Wheeler appealed, arguing that Bailey failed to sufficiently allege a wrongful retaliation since there was no basis for the inference that Wheeler issued the BOLO in retaliation for Bailey's complaints when Bailey failed to allege that anyone at the sheriff's office was aware of the complaints.  Id. at 482.  We held that Bailey's

30

allegations supported an inference that Wheeler issued the BOLO in retaliation given the close temporal relation between the hearing and the issuance of the BOLO. Id. at 483. Further, the allegation that the chief of police told Bailey he could have the BOLO cancelled by contacting the sheriff's office supported an inference that the officers in the police department had been in communication with the sheriff's department about Bailey and the BOLO. Id. We, therefore, held that Bailey adequately alleged causation, and we affirmed the denial of Wheeler's motion to dismiss. Id. at 486.

In Thomas, prison officials searched and ransacked the cell of a Georgia prisoner and confiscated the inmate's legal documents and reference materials. 880 F.2d at 1237. Just a few days earlier, the prisoner had been awarded monetary damages in a civil rights action against prison officials, and following the prison officials' actions, the prisoner filed a second lawsuit claiming that his legal materials were confiscated in retaliation for bringing the first lawsuit. Id. at 1237–38. The district court dismissed the action as a Rule 11 sanction, finding no reasonable basis for the First Amendment retaliation claim. Id. at 1239. We held that the district court abused its discretion and explained that the prisoner established a basis for his retaliation claim because his "legal materials were confiscated only a few days after the verdict" was rendered. Id. at 1242.

Similar to the plaintiffs in both Bailey and Thomas, Beach Blitz alleged a close temporal relation between its protected conduct and the challenged action -- here, just one day passed between Beach Blitz's speech and its store being shut down. Moreover, the deputy city attorney told Beach Blitz's counsel just a few days following their meeting that the closure of Ocean 9 was not a coincidence and was a long time coming. The chain of events with the deputy city attorney supports an inference that the deputy city attorney had been in contact with the officials issuing the closure order.

The district court abused its discretion in finding Count IV frivolous. See Cordoba, 419 F.3d at 1185 (holding that a claim "built . . . from language in our own opinions" was not frivolous). When viewed in light of our precedent, Beach Blitz's First Amendment retaliation claim was not wholly without foundation. It was not unreasonable for Beach Blitz to believe that the City shut down its store as a response to Beach Blitz's protected First Amendment conduct. The claim, while properly rejected by the district court, was not frivolous.

## III.

In sum, we conclude that the district court did not err in finding the City to be the prevailing party for all of the claims, nor did it abuse its discretion in concluding that Counts I, II, III, and V were frivolous and, therefore, that the City was entitled to attorney's fees as to those counts. The district court did abuse its

32

discretion, however, by finding Count IV frivolous and subsequently awarding attorney's fees for that claim too -- the City was not entitled to attorney's fees for a non-frivolous claim.  Because the records themselves do not reveal the portion of the fees attributable solely to defending against Count IV, and because neither the district court nor the City teased out the legal fees incurred in defending Count IV from those incurred in defending Counts I, II, III, and V, we cannot determine the proper fee award.  Accordingly, we affirm in part, vacate in part, and remand to the district court to recalculate the fee award.  See Head v. Medford, 62 F.3d 351, 356 (11th Cir. 1995) (instructing district court on remand to calculate attorney's fees only for work "realistically attributable solely and exclusively to the plaintiff's" frivolous claim).  On remand, the district court should determine what portion of the fees incurred is fairly attributable to defending against Counts I, II, III, and V, and to the extent the fees attributable to Count IV can be discerned, the ultimate fee award should not include any legal fees incurred in defending on Count IV.

We recognize that the City has challenged the nature and extent of the district court's analysis relating to the amount of attorney's fees due and owing. Because, however, we must remand to the district court to determine the proper amount of fees, we make no judgment as to the district court's prior fee analysis. We simply note that in calculating fees, the district court must conduct either an hour-by-hour analysis or apply an across-the-board reduction of the requested

33

compensable hours -- it would be error for the court to apply both methods.  <u>See</u>

<u>Bivins v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1351 (11th Cir. 2008).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

NEWSOM, Circuit Judge, concurring in part and concurring in the judgment:

As I understand the majority opinion, it uses a mix of reasons to explain why the City was a "prevailing party" eligible for an award of attorneys' fees.  First, the majority concludes that the City prevailed because it secured an involuntary dismissal.  *See* Maj. Op. at 14–16.  Based on the Supreme Court's decision in *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642 (2016), I agree that the district court's dismissal order itself—of its own force—rendered the City a prevailing party.  Second, the majority points to what it calls "[s]till another indicator" of the City's prevailing-party status: "the fact that the district court's judgment dismissed Beach Blitz's claims *on the merits*."  *See* Maj. Op. at 17–20 (emphasis added).  I'm not sure that's wrong, but I find the district court's decision here—which dismissed Beach Blitz's claims for failure to state a claim under Rule 12(b)(6) but did so, expressly, "without prejudice"—sufficiently confusing that I would avoid reliance on an "on the merits" criterion.  Accordingly, I must concur in only the judgment as to Part II.A of today's opinion.

**I**

The majority and I agree about what happened here.  Beach Blitz sued the City of Miami Beach under 42 U.S.C. § 1983.  The district court dismissed all of Beach Blitz's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Then, although a dismissal for failure to state a claim should (absent

conditions not present here) be "with prejudice," the district court—for reasons unexplained—dismissed all of Beach Blitz's claims "without prejudice."  Here's the judgment line from the final dismissal order:

> Accordingly, it is hereby
>
> ORDERED AND ADJUDGED that the case is DISMISSED WITHOUT PREJUDICE.

After securing the "without prejudice" dismissal, the City sought attorneys' fees on the ground that it was a "prevailing party" within the meaning of 42 U.S.C. § 1988(b).  The district court awarded the City fees, and Beach Blitz appealed, contending that the without-prejudice dismissal deprived the City of prevailing-party status.

## II

## A

The majority concludes, first and foremost, that the City was a "prevailing party" because it secured an involuntary dismissal.  *See* Maj. Op. at 15–17.  That seems exactly right to me.  As the majority explains, in *CRST*, the Supreme Court held that a defendant has "fulfilled its primary objective," and is thus a prevailing party, "whenever the plaintiff's challenge is rebuffed, irrespective of the precise

reason for the court's decision." 136 S. Ct. at 1651.[1] That makes sense, in both formal and practical terms.

As a formal matter, although some wins are bigger than others, to be sure, a defendant "prevail[s]" whenever it secures an involuntary dismissal. Even a dismissal on jurisdictional grounds, for instance, confers on the defendant a narrow legal right against having to re-litigate the exact same issue in the exact same court. *See, e.g.*, *Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 202–03 (5th Cir. 1968) (holding that although a jurisdictional decision isn't binding on all matters that could have been litigated, it is "conclusive as to matters actually adjudged"); Charles Alan Wright & Arthur Miller, 18A *Federal Practice & Procedure* § 4435 n.7 (4th ed.) ("A dismissal for lack of subject-matter jurisdiction . . . does not preclude a second action on the same claim in a court that does have subject-matter jurisdiction, but does preclude relitigation of the question whether the first court had subject-matter jurisdiction.").

So too, the Court in *CRST* justified its irrespective-of-the-merits criterion on practical grounds. It explained, for instance, that even when a case is dismissed for a non-merits reason—including lack of jurisdiction—"significant attorney time and expenditure may have gone into contesting the claim." *Id.* at 1653. Accordingly,

---

[1] *CRST* involved a different fee-shifting statute, but that provision used the identical term "prevailing party," and "it has been the Court's approach to interpret the term in a consistent manner." 136 S. Ct. at 1646.

the Court observed, the defendant should be eligible for a fee award even in those circumstances: "Congress could not have intended to bar defendants from obtaining attorney's fees in these cases on the basis that, although the litigation was resolved in their favor, they were nonetheless not prevailing parties." *Id.*

I would simply take the Supreme Court at its word—that a defendant "prevail[s]" for attorneys'-fees purposes "whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision," *id*. at 1651— and stop there.

### B

The majority goes on to emphasize what it calls "[s]till another indicator" of the City's prevailing-party status—namely, it says, that the district court dismissed Beach Blitz's claims "on the merits." Maj. Op. at 17. Because I would steer clear of the on-the-merits briar patch, I can't join that part of the majority's opinion.

I would steer clear for two reasons. First, just as a general matter, the phrase "on the merits" is notoriously slippery. Professors Wright and Miller have called it "unfortunate." Wright & Miller, *supra*, § 4435. The Supreme Court has struggled mightily to define it. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502–03 (2001). And the authors of the *Restatement* have abandoned it altogether "because of its possibly misleading connotations." *Restatement (Second) of Judgments* § 19 cmt. a (1982). It's just not the sort of concept that I'm

38

enthusiastic about weaving into the fabric of a prevailing-party determination—at least where, as here, I don't have to.

Second, there is the oddity of this case—namely, the uncomfortable fact that the district court dismissed Beach Blitz's claims for failure to state a claim under Rule 12(b)(6), but did so, expressly, "without prejudice." The majority calls that a "problem." Maj. Op. at 19. I think it's more than that, because I think the district court's decretal language—"ORDERED AND ADJUDGED that this case is DISMISSED WITHOUT PREJUDICE"—is more than what the majority calls a "label." *Id*. at 20. Whether we like it or not, those words—including the "without prejudice" part—constitute the district court's *judgment*. And that judgment matters. Although courts typically explain their legal reasoning in opinions, they "reduce their opinions . . . to judgments precisely to define the rights and liabilities of the parties." *Jennings v. Stephens*, 135 S. Ct. 793, 799 (2015). "If there be any one thing done in the progress of a cause, from its commencement to its conclusion, that is peculiarly and emphatically a judicial act, it is the rendition of judgment." 1 Henry C. Black, *A Treatise on the Law of Judgments* § 106, at 150 n.1 (2d ed. 1902). "The decree," *i.e.*, the judgment, "is the dominant act." *Baxter v. Buchholz-Hill Transp. Co.*, 227 U.S. 637, 638 (1913). So in a contest between, on the one hand, an opinion that to all appearances seems to be an adjudication "on

the merits" and, on the other, a judgment dismissing the case "without prejudice," the latter must prevail.

Here, for me, is the capper:  In attempting to interpret the phrase "on the merits" as used in Federal Rule of Civil Procedure 41—which, among other things, the majority here invokes for its on-the-merits criterion—the Supreme Court in *Semtek* settled on the following understanding:  "[A]n 'adjudication [on] the merits' is *the opposite* of a 'dismissal without prejudice.'"  531 U.S. at 505 (quoting Fed. R. Civ. P. 41) (emphasis added).  That, to me, seems like a red flag. If a "without prejudice" dismissal—which is indisputably what we have here—is *the opposite* of an "on the merits" dismissal, then I just can't bring myself to say that the merits-ness of the district court's decision should contribute in any way to the City's prevailing-party status.

Happily, in order to agree with the Court's resolution of this case, I don't have to.

### III

I would begin and end with what the Supreme Court said in *CRST*:  A defendant "fulfill[s] its primary objective," and thus becomes a prevailing party, "whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision."  136 S. Ct. at 1651.  Given the clarity of that statement, I see no need to search for "another indicator" of the City's prevailing-party status.

And I fear that the one the majority chooses—"on the merits"—is uniquely fraught.  Accordingly, although I join the balance of the majority opinion, as to Part II.A, I concur in only the judgment.